IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN BARTHOLOMEW,

      Plaintiff,                     No. 2:10-cv-3145 KJM EFB P

    vs.

ALVARO C. TRAQUINA, et al.,

      Defendants.               FINDINGS AND RECOMMENDATIONS

                                  /

        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. At all times relevant to this action, plaintiff was confined to California State Prison, Solano ("CSP-Solano"). He alleges that defendants Dr. Traquina and Thompson (a licensed vocational nurse) were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Specifically, plaintiff claims that Dr. Traquina performed surgery for a mole, but on the wrong shoulder, and that after the surgery, Thompson failed to remove all of the sutures. The defendants have filed a motion for summary judgment. Dckt. No. 22. For the reasons explained below, the motion must be granted.

////

////

////

## I. The Complaint

Plaintiff claims in his September 20, 2011 amended and verified complaint (Dckt. No. 11) that on January 7, 2010, he complained to Dr. Chen about pain related to a cancerous, dime-sized mole on his shoulder. *Id.* at 3.[1] In response, Dr. Chen allegedly recommended a biopsy of plaintiff's left shoulder. *Id*. On January 8, 2010, Dr. McAlpine, the Chief Surgeon, allegedly approved Dr. Chen's recommendation. *Id.* On April 6, 2010, plaintiff allegedly had a pre-surgical consultation with defendant Dr. Traquina. *Id.*

Plaintiff claims that on July 9, 2010, Dr. Traquina took a biopsy from plaintiff's right shoulder, instead of his left. *Id.* Plaintiff claims that when he confronted Dr. Traquina with his purported mistake, Dr. Traquina replaced all references in plaintiff's medical file to plaintiff's "left" shoulder, with references to plaintiff's "right" shoulder. *Id.* Plaintiff alleges that the condition on his left shoulder was left untreated. *Id.*

Plaintiff also claims that following surgery, he complained to medical staff that his wound was not healing properly. *Id.* at 5. Dr. Chen and defendant Thompson both allegedly assured plaintiff that there was nothing to worry about. *Id.* On July 19, 2010, plaintiff allegedly saw Thompson for removal of his sutures. *Id.* According to plaintiff, Thompson failed to properly remove his sutures, because on September 20, 2010, plaintiff learned that sutures were still embedded in his incision. *Id.* Plaintiff claims that because of Thompson's failure to properly remove his sutures, his wound became infected and irritated, causing plaintiff pain and loss of sleep. *Id.*

Plaintiff seeks damages for defendants' alleged deliberate indifference to his medical needs. *Id.* at 3, 5.

////

////

---

[1] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

2

**II.     Defendants' Evidentiary Objections**

Defendants have filed objections to nearly everything plaintiff has filed in opposition to the motion for summary judgment. Defendants filed a document entitled "Objections to Undisputed Facts and Exhibits," Dckt. No. 27, another entitled "Objections to Plaintiff's Separate Statement of Undisputed Facts," Dckt. No. 28, and yet another--after plaintiff responded to those objections--entitled "Objections to Plaintiff's Response to Objections." All of defendants' objections are overruled.

To the extent defendants quarrel with plaintiff's characterization of facts as either disputed or undisputed, the disagreement hardly warrants an evidentiary objection. Moreover, where defendants underscore that they dispute key factual assertions by plaintiff, the argument merely suggests to the court that it ought not to take seriously the overarching argument on the motion that there are no disputed issues of fact. Defendants' most frequent objection is that the evidence cited by plaintiff does not dispute the contentions made in defendants' corresponding statement of undisputed facts or otherwise support plaintiff's argument. That is not a ground for refusing to consider the evidence plaintiff submits in opposition to the motion.

Morever, the practice of filing objections to every stitch of paper that the opposing party submits in opposition to a motion for summary judgment simply burdens the process and does not assist the court in considering the issues that are a proper focus for summary judgment. While the practice appears to have grown increasingly popular among some litigators it has drawn criticism from the courts. Indeed, as a judge of this district has explained, the practice is ultimately self-defeating.

> As a practical matter, the court finds this entire exercise of considering evidentiary objections on a motion for summary judgment to be futile and counter-productive. If a court must hear up to hundreds of objections during one civil calendar in addition to the motion itself, then this procedure begins to defeat the objectives of modern summary judgment practice-namely, promoting judicial efficiency and avoiding costly litigation. *See Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979). "More importantly, even seemingly appropriate objections based on

> hearsay and failures to authenticate/lay a foundation are difficult to address away from the dynamics of a trial. During trial, when a party raises valid evidentiary objections, the opposing party will have an opportunity to present the evidence in an alternative and admissible form. At trial, a question can always be rephrased if an objection to it is sustained. Not so in the context of summary judgment practice.
>
> As a further example, if one witness attempts unsuccessfully to testify about matters regarding which that witness lacks personal knowledge, another witness may later be able to testify to the same evidence based upon her firsthand knowledge. In the context of a motion for summary judgment, however, the court must often delay a hearing on the merits for several weeks to offer parties a chance to cure the defects raised by the objections. The alternative is to throw litigants out of court on what may be deemed a curable technicality without a meaningful opportunity to respond-an approach that the court highly doubts the Ninth Circuit would condone. Again, this practice runs counter to summary judgment's assumed time-saving properties.

*Burch v. Regents of University of California*, 433 F. Supp. 2d 1110, 1122 (E.D. Cal. 2006).

Judge Shubb further explained that:

> Under such circumstances it is tempting to throw up one's hands and simply say, as one court already has, that
>
>> The device of summary judgment was conceived as a method of saving the time of the Court and litigants where the case is demonstrably spurious. Where, as here, the time and effort required for a satisfactory definitive resolution of the issues on the basis of the paper record presented on this motion might well exceed that required at a full-dress trial, the Court will not utilize the summary judgment procedure.

*Id.* (quoting *Koleinimport 'Rotterdam' N.V. v. Foreston Coal Export Corp*., 283 F. Supp. 184, 188 (S.D.N.Y. 1968)).

Here, defendants' parade of objections suggests that the court should simply accept all of defendants' evidence and ignore the evidence that plaintiff attempts to present to satisfy his burden of showing that there are triable issues of fact. Defendants misunderstand the summary judgment standards as they apply to the admissibility of evidence relied on by the party opposing

4

summary judgment. Plaintiff's evidence and defendants' objections cannot be divorced from the nature of this proceeding, i.e., summary judgment, in which defendants are the moving parties. *See Burch*, 433 F. Supp. 2d at 1118–24.

The portion of Rule 56 pertaining to supporting affidavits and records provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, on summary judgment, the non-moving party's evidence need *not* be in a form that is admissible at trial. *See Burch*, 433 F. Supp. 2d at 1119 ( citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Instead, a court is concerned with the admissibility of the contents of the evidence. *Id.*; *see also, Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (holding that the district court properly considered a diary which defendants moved to strike as inadmissible hearsay because, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We focus instead on the admissibility of its contents."). Thus, on summary judgment, "objections to the form in which the evidence is presented are particularly misguided where, as here, they target the non-moving party's evidence." *Burch*, 433 F. Supp. 2d at 1119. Accordingly, as long as a party submits evidence which, regardless of its form, may be admissible at trial, it may be considered on summary judgment. *Id*. at 1120.

Having overruled defendants' multiple objections to nearly every item of paper plaintiff has filed in opposition to the summary judgment motion, the court now turns to the merits of the motion.

**III.     Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600

5

1  (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.
2  U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment
3  motion asks whether the evidence presents a sufficient disagreement to require submission to a
4  jury.

5        The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims
6  or defenses.  *Celotex*, 477 U.S. at 323-24.  Thus, the rule functions to "'pierce the pleadings and
7  to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec.
8  Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)  (quoting Fed. R. Civ. P. 56(e)
9  advisory committee's note on 1963 amendments).  Procedurally, under summary judgment
10  practice, the moving party bears the initial responsibility of presenting the basis for its motion
11  and identifying those portions of the record, together with affidavits, if any, that it believes
12  demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323;
13  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets
14  its burden with a properly supported motion, the burden then shifts to the opposing party to
15  present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);
16  *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

17        A clear focus on where the burden of proof lies as to the factual issue in question is
18  crucial to summary judgment procedures.  Depending on which party bears that burden, the party
19  seeking summary judgment does not necessarily need to submit any evidence of its own.  When
20  the opposing party would have the burden of proof on a dispositive issue at trial, the moving
21  party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National
22  Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters
23  which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-
24  24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive
25  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,
26  depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

6

should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Defendants' motion for summary judgment included a notice to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**IV.    Analysis**

Defendants seek summary judgment on plaintiff's claims that they were deliberately indifferent to his serious medical needs. To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference

8

may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is insufficient, by itself, to establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Rather, the plaintiff must show that the course chosen by the defendant was medically unacceptable under the circumstances and that the defendant was aware of the risk posed by the chosen course. *Id.*; *Farmer*, 511 U.S. at 840. When a prisoner alleges a delay in medical treatment, he must show that the delay caused an injury. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Common law negligence claims of malpractice must be differentiated from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

### A.     Defendant Traquina

Plaintiff claims that Traquina was deliberately indifferent to his medical needs by maliciously performing surgery on the wrong shoulder and by leaving the condition on plaintiff's left shoulder untreated.

Traquina asserts that his decision to biopsy the lesion on plaintiff's right shoulder was proper. Dckt. No. 22-7 ("Traquina Decl.") ¶ 18. He states that when he saw plaintiff on April 6 for complaints regarding the left shoulder lesion, he examined plaintiff and observed an atypical pigmented skin lesion on plaintiff's right shoulder. *Id.* ¶¶ 7, 18, Ex. A at CDCR 100. According to Traquina, the right shoulder lesion was suspicious, and it was more important to biopsy it instead of the left. *Id.* ¶ 18. Traquina states that when he saw plaintiff on July 8, he examined plaintiff again to confirm that a biopsy of the right shoulder lesion was appropriate. *Id.* ¶ 8; *see also id.*, Ex. A at CDCR 93 (plaintiff's consent to biopsy of right shoulder lesion, signed and dated July 8, 2010). On the same day, Traquina performed the biopsy and removed the lesion from plaintiff's right shoulder. *Id.* ¶ 8. While the lesion was diagnosed as benign, the pathology report shows that it was a "lentigo," which, Traquina asserts, could have led to melanoma (a type of skin cancer). *Id.* ¶¶ 4, 9, 12, Ex. A at CDCR 128-129.

In response to plaintiff's allegations that he altered plaintiff's medical records after plaintiff accused him of taking a biopsy from the wrong shoulder, Traquina explains that it was during the April 6 examination of plaintiff that he crossed out references to "left" and wrote the word "right," and that he did so to document his findings that day. *Id.* ¶ 7, Ex. A at CDCR 100. Traquina further explains that on his April 6 physician's order for a biopsy, he inadvertently wrote "left" instead of "right." *Id.* ¶ 7, Ex. A at CDCR 41, 153.

Traquina states that on August 3, 2010, he examined plaintiff in response to plaintiff's July 30 request for "corrective surgery." *Id.* ¶¶ 12-13, Ex. A at CDCR 97. Traquina states that he then ordered a biopsy of the left shoulder lesion because plaintiff "wanted to have it done." *Id.* ¶ 13, Ex. A at CDCR 83, 34. The biopsy was taken on August 27, 2010, and was diagnosed

10

as a benign dermatofibroma. *Id.* ¶ 15, Ex. A at CDCR 160-61, 163. Dermatofibromas are small, benign skin growths that can develop anywhere on the body. *Id.* ¶ 15. They are usually painless, but some people experience tenderness or itching. *Id.* Some people prefer to have their dermatofibromas removed if the growth is unsightly, is in an inconvenient location, or is painful or itchy. *Id.*

Plaintiff maintains that Traquina performed the surgery on his right shoulder in error and tells a very different story than Traquina. According to the statements in plaintiff's sworn declaration, the April 6 and July 8 consultations with Traquina were both about the lesion on plaintiff's left shoulder, not his right. Dckt. No. 25 at 3, 14, 17. Plaintiff denies ever being consulted about surgery to his right shoulder and denies ever consenting to such a procedure. *Id.* at 17. He points to the "Physician Request for Services" form, which shows that the surgery requested by Dr. Chen and approved by Dr. McAlpine, was for the lesion on his left shoulder. *Id.* at 8, Ex. A at CDCR 153. It is on that same form that Traquina claims to have inadvertently written "left" instead of "right" when recommending a biopsy. *See id.*, Ex. A at CDCR 153. Plaintiff also finds it significant that the lesion described by Traquina in his April 6 notes matches Dr. Chen's description of the left shoulder lesion. *Id.* at 13-14, 16. Indeed, Dr. Chen measured the left shoulder lesion as "1.2 x 0.8 cm," and noted plaintiff's complaint that it had been there "for years." *Id.* Traquina also measured the lesion for which he recommended a biopsy as "1.2 x 0.8 cm," and noted plaintiff's complaint that the lesion had been present "for more than 2 years." *Id.*, Ex. A at CDCR 153, Ex. A2 at CDCR 100. Plaintiff also maintains that Traquina changed his medical records to read "right" shoulder instead of "left," only after plaintiff informed Traquina that he had taken the biopsy from the wrong shoulder. *Id.* at 14, 16. If plaintiff's evidence is believed, a reasonable juror could conclude that the biopsy scheduled for July 8 was for plaintiff's left shoulder lesion, and that Traquina erred when he took a biopsy from plaintiff's right shoulder.

////

Plainly, there is a dispute as to whether Traquina erred in taking a biopsy from plaintiff's right shoulder. But that alone is not enough. To defeat summary judgment on this Eighth Amendment claim, the dispute must be material to the outcome of plaintiff's allegation of deliberate indifference. *Anderson*, 477 U.S. at 248. As noted above, a dispute as to negligence does not enable plaintiff to proceed to trial on this claim. There must be a genuine dispute as to whether Traquina actually knew of the error and of the serious medical risk that it created, and yet deliberately responded with indifference. *See Estelle*, 429 U.S. at 105 ("[A] complaint that a physician has been negligent in . . . treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

To be sure, plaintiff does argue that Traquina acted with a sufficiently culpable state of mind. Plaintiff disputes whether there was a suspicious lesion on his right shoulder. He insists that Traquina altered plaintiff's medical records to cover up the error, and plaintiff contends that Traquina delayed surgery for the left shoulder lesion. But his evidence (which the court has considered) is not adequate to enable a reasonable jury to find for plaintiff as to these disputes.

In disputing whether there was a suspicious lesion on his right shoulder, plaintiff relies on Dr. Chen's January 7, 2010 notes. The notes document plaintiff's left shoulder lesion, but do not reference a right shoulder lesion. Dckt. No. 25 at 2 (Pl.'s Disputed Fact No. 10). Although Dr. Chen did not document a right shoulder lesion, there is no evidence that Dr. Chen ever examined plaintiff's right shoulder, let alone concluded--contrary to the opinion of Traquina-- that there was no such lesion on it. The fact that Dr. Chen did not document in his notes a suspicious right shoulder lesion (or any right shoulder lesion at all), does not mean that one did not exist. More importantly, there is undisputed evidence in the form of the pathology report showing that there was a "pigmented lesion" on plaintiff's right shoulder. Traquina Decl., Ex. A at CDCR 128-129. Plaintiff does not dispute that the procedure which produced the specimen that was examined by the pathology department did, in fact, involve the right shoulder. Finally, assuming Dr. Chen and Dr. Traquina disagreed as to whether the right shoulder lesion was

12

1 "suspicious" or otherwise atypical (an assumption that is not supported by the record), that
2 difference of opinion does not amount to deliberate indifference. *See Snow v. McDaniel*, 681
3 F.3d 978, 987 (9th Cir. 2012). To the contrary, it would demonstrate a greater level of concern
4 and treatment by Dr. Traquina.

5 Moreover, plaintiff's insistence that Dr. Traquina altered his medical records to cover up
6 his alleged error fails to create an issue for trial. Assuming plaintiff's narrative, plaintiff has not
7 shown that by mistakenly taking a biopsy of the right shoulder lesion instead of the left shoulder
8 lesion, Traquina exhibited such indifference as to offend "evolving standards of decency" in
9 violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105; *see id.* ("[I]n the medical context,
10 an inadvertent failure to provide adequate medical care cannot be said to constitute 'an
11 unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'").
12 Here, the evidence that plaintiff relies on to show Traquina altered plaintiff's medical records
13 after plaintiff confronted him, even when viewed in the light most favorable to plaintiff, would
14 show only that Traquina arguably attempted to cover up his negligence. It would not allow a
15 reasonable jury to conclude that in taking a biopsy from plaintiff's right shoulder, Traquina acted
16 with deliberate indifference.

17 Lastly, plaintiff's focus on the fact that Traquina's purported error delayed the biopsy of
18 his left shoulder lesion, is misplaced. Dckt. No. 25 at 16, 18, 20; Dckt. No. 25-1 at 5 (Pl.'s
19 Undisputed Fact No. 16). It cannot be inferred from the mere fact that Traquina caused the
20 delay, that Traquina intended to harm plaintiff. Moreover, the biopsy from the left shoulder
21 lesion was benign. Plaintiff fails to show that he suffered harmful consequences as a result of
22 that biopsy surgery being delayed from July 8, 2010 to August 27, 2010. *Cf. McGuckin*, 974 at
23 1061-62 (given plaintiff's pain and clear need for surgery, delay in surgery caused him harm).

24 For these reasons, summary judgment in favor of defendant Traquina must be granted.
25 ////
26 ////

### B. Defendant Thompson

Plaintiff claims that Thompson was deliberately indifferent to his medical needs by failing to properly remove his sutures following the July 8 biopsy of his right shoulder.

Thompson submits a declaration stating that on July 19, 2010, she removed the nylon sutures from plaintiff's right shoulder. Dckt. No. 22-4 ("Thompson Decl.") ¶ 3. In doing so, she observed no signs or symptoms of infection. *Id.* ¶ 3, Ex. A. She states she did not knowingly or purposefully leave a suture in plaintiff's right shoulder and has no recollection of plaintiff informing her that he still had a suture in his shoulder. *Id.* ¶ 4. Thompson admits that on September 10, 2010, "a fractional piece of suture" was found "exiting from the scar" on plaintiff's right shoulder, but she quite properly contends this is not evidence of deliberate indifference. *Id.* ¶ 4, Ex. B. She explains that it is not clear whether the suture that was found in plaintiff's right shoulder was a synthetic, dissolvable suture or a nylon suture. *Id.* ¶ 4. She further explains that synthetic sutures are designed to dissolve in the body, but occasionally, they are not completely absorbed, and can eventually pierce the surface of the skin. *Id.*; *see also* Traquina Decl. ¶ 8. She points out that it is not clear from plaintiff's medical records whether the suture that was removed on September 10, 2010 was a synthetic or a nylon suture. Thompson Decl. ¶ 4, Ex. B.

Defendants also submit evidence showing that although plaintiff was seen for post-surgical follow-up by Dr. Chen on July 24, 2010, and had his right shoulder incision area examined by Dr. Traquina on July 27, 2010, and by Dr. McAlpine on August 18, 2010, none of them detected an embedded suture. Dckt. No. 1 at 6; Traquina Decl. ¶¶ 11, 14, Ex. A at CDCR 90, 84.

Plaintiff's evidence in response shows that he submitted a complaint of "throbbing pain" in his right shoulder on July 19, 2010. Dckt. No. 25-1 at 3 (Pl.'s Undisputed Fact No. 9). But Nurse Fontillas apparently saw plaintiff regarding that complaint on July 20. She noted that the incision site was clean, and that there were no signs or symptoms of infection. Dckt. No. 25-1,

Ex. G at CDCR 96. Plaintiff's evidence also shows that he reported to Ms. Hicks on September 7, 2010 that his right shoulder was "constantly itchy" and causing him "throbbing pain." *Id.* at 4 (Pl.'s Undisputed Fact No. 12); Dckt. No. 25, Ex. C. While plaintiff may very well have experienced those symptoms, the record does not contain evidence demonstrating that the medical providers were indifferent to plaintiff's condition and complaints. The complaints made to Nurse Fontillas and Ms. Hicks were met with further exams in an effort to determine the source of the complaints. But there is no evidence in the record from which a reasonable juror could infer that Thompson knew, or even should have known, that a suture was still embedded in plaintiff's right shoulder after surgery. Simply put, plaintiff's evidence does not create a dispute as to whether Thompson knew a suture remained in plaintiff's shoulder and purposely failed to remove it.

Because there is no evidence that Thompson purposefully ignored or failed to respond to plaintiff's serious medical needs, Thompson is entitled to summary judgment.

**V.   Recommendation**

For all of the above reasons, it is hereby RECOMMENDED that the September 4, 2012 motion for summary judgment (Dckt. No. 22) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 11, 2013.

*/s/ Edmund F. Brennan*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE